Scott, J.
The plaintiffs claim to be a portion of the heirs of ■Frederick Haifligh, deceased, and, as such, seek to enforce the execution of a trust, upon which they allege that certain real estate in -the city of Cincinnati, was by the said Frederick Haifligh, on the 9th day of January, 1809, conveyed to his son,. Jacob Haifligh, and by the said Jacob was subsequently, in 1818, sold and conveyed, with notice of the trust, to the trustees of Cincinnati township, of whom the common council of the city of Cincinnati is the succes•sor. The premises in controversy consist of four acres of land, which, in 1809, when the ancestor of the plaintiffs conveyed the 172] same to his son *Jacob, were an out-lot, forming part of the plat of the city of Cincinnati, and were then used for the purposes -of pasture. Since that time, however, by the growth and extension of the city, said lot has been surrounded by streets, by dwelling and business houses, and being thus thrown in the midst of the .business portion of the city has become quite valuable. The city ■of Cincinnati has constructed upon the premises, for the purposes .of a hospital, a large and costly building, known as the Commercial Hospital of Cincinnati.
The .plaintiffs claim, by their petition, filed in the court of .common pleas of Hamilton county, March 26, 1855, that the said Frederick Haifligh, being the owner and in possession of said premises, and of other real estate within and in the neighborhood -of said city of Cincinnati, and being of advanced age and feeble health, and desirous of having his estate managed to the best advantage for the benefit of his creditors and children, on the 26th •day of March, 1808, by the advice of personal friends, executed and delivered to his son Jacob Haifligh, three deeds of conveyance, vesting in his said son Jacob, the legal.title to all of his said estate; that said conveyances were made to the said Jacob, for the benefit •of the creditors and children of the said Frederick, and with the promise of the said Jacob that he would first pay the just debts •of the said Frederick, and distribute the residue of the estate equally among his seven children, of whom the said Jacob was one; -and that said promise of said Jacob was the only consideration upon *157 which, the premises were conveyed to him, as aforesaid. That saidl Jacob, in violation of the trust reposed in him, left the State of' Ohio, soon after the death of his father, which occurred on the 9th ■ day of January, 1809, and did not return till 1818, when he sold and conveyed the premises to the trustees of Cincinnati township, who purchased the same with full knowledge of the rights of the heirs of said Frederick Haifiigh and of the trust under which said" Jacob held the same.
The plaintiffs thereupon seek to charge the city of Cincinnati (as successor to the rights of the township trustees), and the premises, so conveyed, with the trust aforesaid, and to restrain the city from disposing of or encumbering the premises, *and to have partition of the premises made among the heirs of said Frederick Haifiigh, pursuant to said trust. And with a view to such partition, a portion of the heirs of said Frederick Haifiigh are made defendants to the petition.
The city, in its answer, sets up six different defenses, as follows: 1. That Frederick Haifiigh, the plaintiff’s ancestor, never had a legal title to the premises, nor any other than a mere possessory title, and that the city has a connected legal title to the promises, not derived from or through the said Frederick. 2. That the ■■ deed from Frederick Haifiigh to Jacob Haifiigh was not in trust, but was made for the purpose of defrauding the creditors of the. said Frederick Haifiigh. 3. Denying that the trustees of Cincinnati township had notice of the rights of the children and heirs • of Frederick Haifiigh. 4. That the city had, prior to the filing of" the petition in the case, about thirty-five years of open, notorious, exclusive, adverse possession of the premises. 5. That the cause of action-did not accrue to the plaintiffs within twenty-one years. 6. That the plaintiffs are estopped by a judgment of the Supreme •• Court of the State of Ohio, within and for the county of Hamilton, rendered at July term, 1822, in a suit prosecuted by the heirs-of Frederick Haifiigh against Jacob Haifiigh, in which the title - of the city, as a purchaser from Jacob Haifiigh, was established.
To this answer a reply was filed, as follows : 1. Denying generally, the truth of the answer. 2. Denying that the possession of the city was adverse, as stated in the fourth ground of defense. 3. As to the fifth ground of defense, alleging that the city held the property in trust for the plaintiffs; and as to such of the plaintiffs as are descendants of one of Frederick Haifligh’s daugters, that *158 their mother was a feme covert from 1806 till April 22, 1849, when ;she died; and that their father was tenant by the curtesy from that date till February 27, 1863. 4. As to the sixth answer, that neither they nor their ancestors from whom they claim, were parties to the record; and that if the proceedings can be sustained, they rely upon the same, as evidence establishing the truth of their allegations.
Upon the evidence adduced by the parties respectively in ^support of the issues thus joined, the case was submitted to -the district court, and was reserved by that court for decision here.
Of the numerous questions arising under the pleadings in this ■'case, and presented by counsel in argument, we apprehend that •the determination of a single one must be decisive of the case.
The deeds of conveyance from Frederick Haifligh to his son .Jacob, upon which it is here sought, by parol evidence, to ingraft .an express trust, are upon their face absolute. Now, if it be con- • ceded that such a trust may be established by parol evidence, yet it has been held that such trust can only be established by evidence “ clear, certain, and conclusive, in proof not only of the existence of the trust at the time of the conveyance, but also of its terms and conditions. The proof must show the existence of the trust affirmatively, and so conclusively as to remove all reasonable .and well-founded doubt.” Miller v. Stokely, 5 Ohio St. 194. Now, if it be conceded that the evidence in this case satisfactorily establishes that the conveyances by Frederick Haifligh to his son .Jacob were upon an express trust, yet the important question remains, whether the terms of the trust were such as to deny to the trustee the absolute power of disposing of the premises by sale or ■ conveyance, or whether the trust by its terms contemplated the ■ exercise of the power of sale by the trustee. The conveyances being absolute on their face, carried with them, prima facie, the power of sale and conveyance, on the part of the grantee. The burden of proof is, therefore, on the plaintiffs, to show such a trust in the case as would be inconsistent with a power of sale. The ■trust, as stated by the plaintiffs in their petition, was that, Jacob, the grantee, should first pay the just debts of the grantor, Frederick, and then distribute the estate equally among the grantor’s -children. The existence of a trust in the case and its terms are testified to by two witnesses only, to wit, John Shally and Maria JB. Stall, of whom the latter is a daughter of Frederick Haifligh *159 rand one of tbe present plaintiffs, and the former is a son-in-law of •said Haifligh, and father of other heirs claiming under the trust.
*Shally testifies that “ the conveyances were made in trust to said Jacob, first, for the purpose of paying all legal claims, as well as for the purpose of securing a competency for his widow in case he should die before his wife, an event which he calculated would occur, in consequence of his feeble state of health at that time; and said conveyance was conditioned that after the decease ■of his, said Frederick’s wife, said real estate should be equally divided between his children.” “His health was so bad at that time that he thought he could not live long, and he wanted to secure the proceeds of said property to his widow during her life, and after her death said property was to be equally divided among the heirs.”
Mrs. Stall testifies that she knows nothing about the conditions •of the conveyance to Jacob, except what her parents told her. That her father was, at the time of making the deeds, sinking fast with consumption; that his neighbors advised him to convey the property to some one to keep his sons-in-law from destroying or spending it. He asked: Who shall I trust? To whom shall I convey? They said: To Jacob Haifligh; and after some hesitation, he made the deed to Jacob, who was then in the State of Louisiana, and did. not see the deeds till his return to this country in 1818. That upon his return, his mother told him of the conveyance and its objects, .and gave him the keys of the desk to overhaul his father’s papers. .She told him that the property was given to him for safe-keeping for her while she lived, then to go to the children equally.
Without a further recital of the evidence, it is sufficient to say that it shows that Frederick Haifligh, at the date of the conveyance in question, was indebted to sundry persons, in sums amounting, in the aggregate, to at least seven hundred dollars, and that -three hundred dollars of this sum was a security debt. That infirm health -had compelled him to quit business, and improvident sons-in-law had drawn heavily on his limited resources. Hnder these ■circumstances, in March, 1808, he conveyed all his property, consisting of the out-lot in question, an in-lot on Sycamore street, on wfiieh he and his family had been residing, and a farm of 108 aeres situate five miles from the city, to his son Jacob, who was then in the State of Louisiana. This conveyance was duly recorded.
*No provision was made by this conveyance, or by any cotemporaneous writing, for the payment of his debts, for his own *160 support, or that of his wife and his six other children. From theeircumstances shown in the case, it is difficult to believe that this-voluntary conveyance was not made for the purpose of defrauding, hindering, or delaying creditors. But if we give full credit to the-witnesses who testify on this subject, after the lapse of fifty years,, and suppose that the conveyance was in trust for the payment of debts, for the support of the wife and her children, and for the-equal benefit of the children after the death of their mother, the-question arises, how were the debts to be paid, and how was the-family to be supported during the life of the wife and mother, without a sale of any part of the property? It could hardly have-been intended that the creditors should be required to take portions-of th.e trust property in satisfaction of their claims. The conveyance must have been intended to effect a purpose of some kind. Yet if the property was to be held by the son to whom it was conveyed, without a sale of any part of it, till his mother’s death, and. then to be divided among the children according to the statutq of descents, it is not easy to see why any conveyance should have been made. We fail to perceive how or why the property would be more likely to be squandered by sons-in-laws while in the hands of the father, than when conveyed by him to his son. But the petition represents that Jacob was made a trustee of the property for the purpose (after paying the debts) of distributing the estate equally among the children. And Shally testifies that the grantor, Frederick Haifligh, “ wanted to secure the proceeds of said property to his widow during her life, and after her death said property was-to be equally divided among the heirs.” These terms, “ distributing ” nnd “ proceeds," are certainly more properly applicable to the moneys arising from the sale of real estate than to the land itself.
Upon a full and careful examination of the depositions of the-witnesses by whom the trust in this case is sought to be established, we are by no means satisfied, supposing the conveyance to have-been made in good faith and for an honest purpose, that it was the-intention of the grantor to withhold *from the grantee the power of sale, which was, prima facie, conferred by the absolute conveyance of the legal title. We all concur in the opinion that, the sale of the promises by Jacob Haifligh was not a breach of the-trust as proved. And the trust being, first, for the payment of debts generally, of which no schedule was made, and for the support and maintenance of the grantor’s widow during her life, the* *161 purchaser was not bound to see to the application of the purchase-money. In the language of the authorities, “a purchaser can not. be expected to see to the due observance of a trust so unlimited and undefined.” .3 Sug. on Ven. 155; Curwen on Abstracts, sec. 57.. The city having bought from a trustee authorized to sell and receive the purchase-money, took the premises discharged from the - trust, and the plaintiff’s petition must therefore be dismissed.
Brinkerhoee, C. J., and Day, White, and Welch, JJ., concurred..